[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This dissolution matter comes to the court by writ, summons and complaint dated June 28, 1989 by Susan B. Adams (hereinafter "plaintiff/mother") against Danliel A. Adams (hereinafter "defendant/father") alleging irretrievable breakdown of the marriage and claiming a dissolution, alimony, custody, support and other related items.
The file is replete with interlocutory motions and pendente lite orders, restraining orders and related CT Page 8461 activities. An attorney has been appointed for the minor children. Custody has varied during the pendency of the action. At the time of the hearing the oldest child, Melissa, had attained the age of eighteen years. The child Renee J. Adams was in the custody of the father, and the two younger children, Joshua and Amanda, were in the custody of the mother.
The State of Connecticut was represented by an Assistant Attorney General. By stipulation of the parties, it was agreed that the Assistant Attorney General may seek, such support orders as appear appropriate depending upon judgment of the court with regard to custody on a post-judgment basis without prejudice. That stipulation having been entered into during the trial of the case the Assistant Attorney General did not participate in the trial.
The trial of the matter was held in Norwich court on July 15, 1992, and, subsequently on August 25, 1992 in which all parties were represented by counsel and were present in court. The attorney for the minor children, Ramona Dittman, was also present and fully participated in the trial.
The plaintiff presented her own testimony and various exhibits in support of the allegations of her complaint and the prospective claims for relief. The defendant produced the testimony of the Family Relations Officer, David Henriques, Sister M. Peters Bernard of the Sisters of Charity Order and himself in support of his claims.
The court, having heard the evidence, will make the following findings relevant to the disposition of the matter.
Mrs. Adams is thirty-six years old. Mr. Adams is forty-six years old. Mr. Adams has completed a high school education. Mrs. Adams, who was fifteen and one-half years old at the time of her pregnancy with the first child, did not complete high school. She claimed to have completed some camp training and she also testified that she attended a school of music.
Mr. Adams has been employed at Electric Boat division of General Dynamics for eighteen years, and does electrical work in connection with the installation of electrical cables in submarines. His affidavit reflects a gross weekly income from that source of $570.80. In addition he has disclosed a second job at a restaurant where he works three nights a week and earns an additional $55.00 to $60.00 CT Page 8462 weekly. His training is limited to the training he has received at his employment related to the work he does.
Mrs. Adams, the plaintiff, has been employed at Two Guys for three months, at the Groton Regency Convalescent. Home for three and one-half years. She was also employed by "Talent America" for eight and one-half years and has worked at the Canteen, Subway and AAA. She was last employed three or four years ago. She claims not being able to work hard because of a back injury but has claimed to have applied for, employment to several places, one of which was a cinema, since July, 1989. `No others could be specifically identified.
With regard to the health of the parties, it appears that defendant has suffered from alcoholism, has received counseling, and occasionally attends meetings of Alcoholics Anonymous. The plaintiff complains of back injuries, continuous pains concerning which she has taken his recommendations was introduced into evidence as to Defendant's Exhibit 1.
The estate of the parties at the time of the dissolution hearing had become limited to a stock savings plan which the defendant had at Electric Boat division of General Dynamics (with approximately $7,413.82 accessible to the defendant under the terms of the plan) and a noncontributory pension with no cash value. The defendant in addition shows some $200.00 in furniture and belongings and $405.00 in savings. Plaintiff on the other hand shows no assets, was receiving state assistance and claims liabilities of over $12,000.00. A house which had been owned by the parties at 155 Broad Street, Groton, Connecticut was foreclosed for non-payment of the mortgage during the pendency of the dissolution action. Several motions filed during the pendency of the action which appear in the file relate to the difficulty the parties had in agreeing on an attempt to sell the house in lieu of the foreclosure.
The evidence suggests that at several junctures during the recent years it has been recommended that the plaintiff seek psychological or psychiatric counseling and/or treatment. This has continued up to recent suggestions by the sisters at the catholic shelter where the plaintiff was residing at the time of the trial. The plaintiff, however has, for reasons which she explained variously as relating to scheduling or transportation, never followed up with any such suggestions. She did claim to have children were happy at the shelter with their mother. As to future plans, Sister Bernard testified that arrangements were being made with the State Department of Income Maintenance to CT Page 8463 transfer the plaintiff and the two minor children to South Park Inn, in Hartford, at the expense of the State.
In this matter the court is required to take into consideration the factors set forth in 46b-82 and 46b-81 of the General Statutes as well as 46b-56 relating to the custody of the minor children. In addition the court in this case will consider the credibility of the witnesses, their appearance and demeanor in their testimony as well as the interrelationship of the various orders one to the other.
As indicated above, the plaintiff was found to be less than credible in many respects with regard to her testimony. Whereas in contrast, the defendant appeared to the court to be credible in his admission of the various problems which had beset him personally, and in relationship with his children and his wife.
The court finds that the parties were married on November 11, 1973 in Long Meadow, Massachusetts and had I resided in Connecticut continuously for one year prior to the date of the complaint, and that their marriage had broken down irretrievably.
Accordingly, the court orders a dissolution of the marriage.
The court is thankful for and appreciative of the obvious efforts by the attorney for the minor children and otherwise.
f) The mother shall be entitled to, the following holiday visitation: For Easter, Thanksgiving and Christmas the mother shall be entitled to take the evening immediately preceding the holiday from 4:00 p. m. to 7:00 p. m. g) The mother shall not be entitled to pick up or see the children at their schools and may not interfere with educational decisions relating to the children.
The court will continue its jurisdiction over the custody/visitation questions in this case and continue the appointment of the attorney for the children post-judgment.
The defendant/father shall be required to bring the children for monthly appointments to the attorney for the children and to supply written evidence to the said attorney of medical and dental appointments, attendance at counselling for Joshua, proof of attendance at school as well as to provide a written signed release for the attorney to speak with the teachers, counselors and doctors to verify CT Page 8464 appropriate care.
The defendant is ordered to provide medical insurance as available to his at his place of employment for the benefit of the minor children and to be fully responsible for their uninsured medical expenses. The provisions of46b-84(c) shall apply.
No support order is entered against the plaintiff at this time.
The court approves attorney's fees' for the attorney the Family Services Unit of the Superior Court and the extra effort that seems to have been applied in this difficult case.
It is clear from the Family Relations Report in evidence that the Family Relations Officer feels the question of custody in this case is a difficult one with the choices between two parents, each of whom has some problems It is clear that the defendant has suffered from alcoholism in the past and has been guilty of some inappropriate conduct with regard to his children. Nevertheless, the court in weighing the evidence in this case has concluded that it is in the best interest of the children that the recommendations of the both the Family Relations Officer and the attorney for the minor children should be accepted, and custody of all three minor children is therefore awarded to the defendant/father.
The plaintiff/mother shall have supervised visitation rights as follows: "
a) Wednesday's from 4:00 p. m. until 7:00 p. m. and Sunday from 12:00 p. m. until 5:00 p. m.
b) Supervision shall be by the defendant/father or someone authorized by him.
c) There shall be no overnight visitation.
d) The mother shall return and pick up the children promptly.
e) The mother shall not remove the children from the State of Connecticut at any time during the visitation or received some counselling from a Father Liberty at the shelter but has not followed through with Father Liberty's suggestion that she receive psychological treatment or counselling. CT Page 8465
The plaintiff has introduced evidence suggesting that she has a plan to get an apartment in East Hartford with two bedrooms and even introduced a brochure (Plaintiff's Exhibit 7) describing the type of apartments which would require a $595.00 security deposit and $595.00 per month rent thereafter. She expected to get some help from the catholic shelter where she is presently residing in terms of furniture. Sister Bernard, however, testified that the state would not provide $595.00 for a security deposit, and, moreover the plaintiff had refused to attend the counselling required at the shelter with regard to budgeting, and had not put aside funds for a security deposit during the fifty-four day stay at this shelter without charge. In fact, Sister Bernard testified that the plaintiff had been requested to leave the shelter because of her uncooperative behavior. The plaintiff had not been totally cooperative according to the testimony of the sister who was the manager of the shelter. She did not cooperate with the staff. She did not cooperate in doing chores. She did not get the requested evaluation and she refused to meet with the coordinator to arrange for budgeting. In addition, she was not appropriate in her conduct with her children, particularly in the dietary area. Sister Bernard testified that she did not feel that the various medication and has visited with different doctors. She complained of a stroke. At one point she testified that she did not fall down stairs at a neighbor's house, and that her back problems were attributable to the violence of the defendant; but on cross-examination she admitted that she has fallen at a neighbor's house and had received a settlement of a law suit with regard to her back injury suffered at that time. She claimed in her testimony that the injuries suffered in the fall at the neighbor's house had completely healed, notwithstanding allegations of permanent injury in the complaint. She claimed that the present injury was attributable to violence by the defendant. The court finds the testimony of the plaintiff with regard to her health less than credible. The plaintiff has kept up a membership at a gymnasium, even while living in a shelter with her two minor children, with the claim that the "working out" at the gymnasium assists her with the back pains. She now takes no medication for the back pains according to her testimony,.,
The marriage of the parties was a tumultuous one with difficulties through the years. The court, from the evidence, finds that the cause of the breakdown of the marriage was attributable equally to both of the parties, and no special significance will be attributable to that factor when fashioning the orders of the court. CT Page 8466
The Family Services Unit of the Superior Court was called upon to make a study with regard to the custody questions in this case and a report, of David Henriques with, for the minor children in the amount of $1,497.00 to date to be paid by the State under the statute.
The defendant is ordered to pay to the plaintiff the sum of one dollar a year alimony modifiable only after the minor children of the parties reach the age of eighteen or the defendant for some other reason is no longer responsible for the support of said children. The amount of alimony is based upon the income of the defendant at the present time including both sources of employment as indicated above, and the needs of the defendant with regard to the support of the children.
The defendant is ordered to pay to the plaintiff an allowance to prosecute in the amount of $750.00 within ninety days.
The defendant is ordered to maintain medical insurance (COBRA) available through his place of employment for the benefit of the plaintiff for the statutory period of three years at his sole cost and expense, with the plaintiff being responsible for any uncovered or unreimbursed medical expenses she may incur.
With regard to the claims for a distribution of property, the court declines to order any property transferred at this time it being the anticipation of the court that the defendant will require all of the funds available in his SSIP to arrange for a larger living quarters and furniture and furnishings, clothing and medical and dental expenses for the three minor children who are the children of both of the parties to this action.
With regard to the debts of the parties, the court orders that the defendant shall be solely responsible for any and all debts, except those which were secured by mortgage, incurred during the marriage of the parties prior to their physical separation. He is ordered to hold the plaintiff harmless from the same.
Counsel for the defendant is ordered to prepare the judgment file.
Leuba, J. CT Page 8467